UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID ABIODUN K.G.B. ONAFEKO**, <br><br> *Pro se* Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, <br><br> Defendants. | Case No. 19-cv-0007 (CRC) |

**MEMORANDUM OPINION**

In 2018, David Onafeko, a British citizen seeking asylum in the United States, filed three applications for employment authorization with the United States Citizenship and Immigration Service ("USCIS"). The agency denied each application as premature under a regulation that requires applicants to wait 150 days until after USCIS receives a complete asylum claim to seek employment authorization. See 8 C.F.R. § 208.7(a)(1). Mr. Onafeko, proceeding *pro se* and *informa pauperis*, filed suit against USCIS complaining that it erred in denying his employment authorization applications, which the Court construed a challenge under the Administrative Procedure Act ("APA"). Order 1 (Feb. 4, 2020). Before the Court are cross-motions for summary judgment and portions of the administrative record. The only dispute between the parties is whether USCIS correctly calculated the regulatory 150-day waiting period in denying Onafeko's three employment authorization applications. Finding no basis to conclude that USCIS acted arbitrarily or contrary to the asylum regulations, the Court will grant summary judgment to the agency.

I.  **Background**

In January 2018, Onafeko obtained a visa to travel to the United States. Compl., Exh. A, ECF No. 1-2 at 12–13.[1] After arriving in the country, he submitted a claim for asylum (Form I-589). Onafeko then filed three successive applications for employment authorization (Form I-765) at various points in 2018, each of which was denied by USCIS. In rejecting each application, the agency explained that Onafeko was "not eligible for employment authorization" at the time of each application because "less than 150 days had elapsed on the clock used to calculate employment eligibility." Id. at 3.

In January 2019, Onafeko filed suit against the agency complaining that it had improperly denied his three employment authorization applications. The Government moved to dismiss, and Onafeko filed a response which included a demand for summary judgment in his favor. Pl. Opp. ¶¶ 1–2. The Court construed Onafeko's suit as one challenging agency action under the APA. Order 1 (Feb. 4, 2020). It therefore converted the Government's motion to dismiss into a motion for summary judgment and directed the Government to file at least the portions of the administrative record that pertain to its calculation of the 150-day asylum clock as to Onafeko's various applications. Id. at 2–3.

Before the Court are the cross-motions for summary judgment and relevant portions of the administrative record. The administrative record includes a declaration from the Section Chief of the USCIS Texas Service Center, the center that received each of Onafeko's employment authorization applications, which explains how USCIS calculated the asylum clock in Onafeko's case and why it denied each employment authorization application at issue. See

---

[1] The Court refers to the ECF-generated page number, not the handwritten page number at the bottom of each page.

Decl. of Michael Rich ("Rich Decl."), ECF No. 26-1.  It also includes records from USCIS's Person Centric Query Service, which document the agency's calculation of Onafeko's asylum clock.  See PCQS Records, ECF No. 26-2.[2]  Finding that the administrative record adequately supports the USCIS's conclusions that Onafeko was not eligible to file for employment authorization at the time of each of his applications, the Court will grant summary judgment to the agency.[3]

## II.   Legal Standards

"Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review."  Loma Linda Univ. Med. Ctr. v. Sebelius, 684 F. Supp. 2d 42, 52 (D.D.C.), aff'd, 408 F. App'x 383 (D.C. Cir. 2010).  But, "due to the limited role a district court plays in reviewing the administrative record, the typical summary judgment standards set forth in Federal Rule of Civil Procedure 56 are not applicable" to APA cases.  Farrell v. Pompeo, 424 F. Supp. 3d 1, 10 (D.D.C. 2019).  Instead, judicial review is limited to determining whether "agency action[s], findings, and conclusions [are] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "The scope of review under the 'arbitrary and

---

[2] USCIS "developed the Person Centric Query Service (PCQS) to allow users to submit a single query and view all transactions involving an immigrant or nonimmigrant across multiple DHS and external systems."  Dep't of Homeland Security, DHS/USCIS/PIA – 010 Person Centric Query Service (Apr. 2018), https://www.dhs.gov/publication/dhsuscispia-010-person-centric-query-service.  In response to a query about an individual, "PCQS returns a consolidated view of the individual's past interactions with DHS Components and other agencies as he or she passed through the U.S. immigration system."  Id.

[3] The Court directed Onafeko to respond to the Government's administrative record by March 16, 2020, see Order 4 (Feb. 4, 2020), and, having received no response, directed Onafeko to show cause in writing by April 20, 2020 why summary judgment should not be granted to the Government, see Minute Order (Apr. 3, 2020).  He has not responded.

capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

In denying Onafeko's applications for employment authorization, USCIS invoked a set of regulations promulgated under the Immigration and Nationality Act. Those regulations provide that "an applicant for asylum who is not an aggravated felon shall be eligible . . . to request employment authorization." 8 C.F.R. § 208.7(a)(1). Such an application for employment authorization "shall be submitted no *earlier* than 150 days after the date on which a complete asylum application submitted in accordance with §§ 208.3 and 208.4 has been received." Id. (emphasis added). Applicants cannot accrue time towards the 150-day asylum clock when they cause delays during the asylum application process, "including delays caused by failure without good cause to follow the requirements for fingerprint processing." Id. § 208.7(a)(2); see 8 C.F.R. §§ 1240.67–.68 (requiring asylum applicants to "compl[y] with fingerprinting requirements").

**III. Analysis**

Mr. Onafeko seeks a determination that the agency's denials of his three employment authorization applications were unlawful.[4] The question on summary judgment is whether the agency properly calculated the regulatory 150-day waiting period for Onafeko in denying those applications as premature. The administrative record shows that Onafeko filed a complete

---

[4] The asylum regulations provide that "there shall be no appeal from the denial of [an employment authorization] application." 8 C.F.R. § 274a.13(c). USCIS's denials of Onafeko's employment authorizations therefore constitute reviewable final agency action. See Kyzy v. USCIS, 420 F. Supp. 3d 322, 327–28 (E.D. Pa. 2019) (recognizing the same).

asylum application on April 20, 2018. Rich Decl. ¶ 6; PCQS Records 4, 6.[5] On April 23, 2018, Onafeko failed to appear for a fingerprint processing appointment. Rich Decl. ¶ 10; PCQS Records 6. Under 8 C.F.R. § 208.7(a)(2), his failure to appear for that appointment froze the asylum clock at three days. Rich Decl. ¶¶ 10–11. Onafeko subsequently filed his first two applications for employment authorization on August 31, 2018 and November 18, 2018. Id. ¶¶ 8, 11. At the time of both those applications, his asylum clock remained stuck at three days, far short of the 150 days necessary under 8 C.F.R. § 208.7(a)(1). Id. ¶¶ 9–11. The agency therefore properly denied both applications as premature.

Onafeko subsequently appeared for a biometrics appointment in connection with his asylum application on January 15, 2019, which unfroze the asylum clock. Id. ¶¶ 10, 12; PCQS Records 6. He then filed a third application for employment authorization on February 28, 2019. Rich Decl. ¶ 12. The agency again denied this application. Although Onafeko's appearance for the biometrics appointment in January 2019 restarted the asylum clock, he had only accrued a total of 55 days on the clock at the time of his third application. Id. The agency therefore did not act arbitrarily or contrary to law in denying his third application as premature.[6]

---

[5] Onafeko states that he first made an application for asylum on February 20, 2018, which was allegedly confirmed received by USCIS on February 27, 2018. Compl., Onafeko Statement ¶ 7; id., Exh. A at 4. He goes on to state, however, that he submitted "a follow-up to [his] original application" to USCIS on April 14, 2018. Compl., Onafeko Statement ¶ 8; id., Exh. A at 4. That account is consistent with USCIS receiving a *complete* asylum application on April 20, 2018. See 8 C.F.R. § 208.7(a)(1) (providing that "the [employment authorization] application shall be submitted no earlier than 150 days after the date on which a *complete* asylum application submitted in accordance with §§ 208.3 and 208.4 has been received" (emphasis added)).

[6] As of June 9, 2019, Onafeko had accrued 150 days on the asylum clock and therefore became eligible to apply for employment authorization. Rich Decl. ¶ 13. The agency represents that it stands ready to adjudicate and approve an employment authorization application from Onafeko, should he choose to file one. Id. ¶ 14.

Onafeko does not contest the agency's interpretations of the applicable statutes and regulations. He contends only that USCIS's calculation of "the asylum 'clock' is wrong" and that its "invitation for Plaintiff to carry out biometrics is either backdated" or "fraudulent." Pl. Opp. ¶ 3. The Government has submitted affidavits from two agency officials and records from its internal immigration database confirming its chronology of the dates that Mr. Onafeko's asylum claim was complete, that he failed to appear for his fingerprinting appointment, and that he filed his three employment authorization applications. "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). Onafeko has not offered any evidence to rebut the "presumption of legitimacy accorded to the Government's official conduct." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004).[7] Accordingly, the Court will accept the Government's calculations of the asylum clock, as documented in the administrative record.[8] Those calculations show that

---

[7] In any event, Onafeko's backdating allegation only pertains to the date that the Government *invited* him in for fingerprint processing. He does not allege that the Government misrepresents the date of his actual fingerprint appointment or that he in fact missed the appointment. If Onafeko belatedly received the invitation for fingerprint processing, that might bear on whether his failure to appear for it had "good cause." 8 C.F.R. §§ 208.7(a)(2), 208.10. But, nothing in the record indicates that Onafeko put that issue before the agency, so the Court is hard-pressed to see how it could find that the agency acted arbitrarily in refusing to find that Onafeko's delay had good cause. See generally Camp v. Pitts, 411 U.S. 138, 142 (1973) (holding that the "focal point for judicial review should be the administrative record already in existence"). Moreover, Onafeko showed up for fingerprinting more than eight months after the initial appointment that he missed.

[8] Onafeko alleges that he filed his 2018 applications for employment authorization on dates different than those reflected in the agency official's affidavit. See, e.g., Compl. ¶¶ 10–11. Even accepting his account of the dates that he filed the 2018 employment authorization applications, there is no basis for finding that the agency acted arbitrarily and capriciously in

USCIS properly denied all three employment authorization applications as premature under the asylum regulations.

## IV. Conclusion

For the foregoing reasons, the Court will grant summary judgment to the agency, deny Onafeko's motion for summary judgment, and close the case.[9]  A separate order follows.

Date: May 28, 2020

CHRISTOPHER R. COOPER
United States District Judge

---

denying the applications as premature.  The undisputed record shows that the asylum clock was stopped at three days for the entire duration of 2018 because of Onafeko's failure to appear for his biometrics appointment on April 23, 2018.

[9] Onafeko's response to the Government's motion to dismiss also includes a request that the Court reconsider the February 7, 2019 Order denying his mandamus application.  Because the Court finds that the agency did not act arbitrarily or contrary to law in denying Onafeko's past employment authorization applications and the Government represents that it is ready to adjudicate an employment authorization application from Onafeko (should he file one), the Court sees no basis to grant mandamus and will deny Onafeko's motion for reconsideration.